THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SAM ARKOW, Defendant.

City Magistrate's Court of New York, Borough of Brooklyn, July 30, 1953.

636

*Miles F. McDonald, District Attorney (Dennis Regan* of counsel), for plaintiff.

*Harry Anders* for Esther Gershberg, complainant.

*Abraham Shapiro* for defendant.

MALBIN, M. Defendant is charged with a violation of section 435-5.0 of the Administrative Code of the City of New York, which is entitled " *Unnecessary noises prohibited.*" Specifically, defendant is charged with maintaining an air-conditioning unit in his home from which emanates " an unreasonably loud, disturbing and unnecessary noise of such character, intensity and duration as to be detrimental to the health " of the complainant, a neighboring dweller. Application is also made by the complainant for the issuance of process charging defendant with the maintenance of a public nuisance in violation of section 1530 of the Penal Law.

The matter was heard on a stipulated statement of facts. The parties stipulated that the defendant had installed and maintains an air-conditioning unit projecting from one of the windows of his home and that the air-conditioning unit is in operation during the day and throughout the night. The unit is described as a three-quarter ton unit, the size commonly used for residential purposes. It is a standard brand made by a well-known manufacturer. The unit is in proper working order and the sound emanating therefrom while the machine is in operation is similar in intensity and character to that commonly made by home air-conditioning units.

The court is confronted with the question of whether the ordinary operation of a properly functioning home air-conditioning unit constitutes an offense or crime, if its operation proves disturbing and annoying to persons in the immediate vicinity. This question is of far-reaching importance, inasmuch

as it directly affects not only the many thousands of persons within the city of New York who own air conditioners, but also the many thousands of persons who do not own air conditioners but who are disturbed by them.

The court has carefully analyzed section 435–5.0 of the Administrative Code, upon which the complaint in the instant case is framed, and has reached the conclusion that none of its subdivisions has any application to the case at hand. The enumerated acts which are prohibited are listed in twelve subdivisions, none of which either specifically or by implication embraces the operation of an air-conditioning unit. The problem therefore, resolves itself to whether the operation of a home air-conditioning unit under the circumstances of this case constitutes a violation of the general provisions of that section, albeit not the specific provisions. The general provision reads as follows: "Subject to the provisions of this section, the creation of any unreasonably loud, disturbing and unnecessary noise is prohibited. Noise of such character, intensity and duration as to be detrimental to the life or health of any individual is prohibited."

This section does not appear to have been the subject of any reported judicial opinion. Its purpose is evidently to define and punish a particular type of nuisance. It differs from the crime of maintaining a public nuisance as defined by section 1530 of the Penal Law in two principal respects: (1) The Administrative Code provision is aimed only at noise, whereas the Penal Law provision is aimed at any act which is detrimental to comfort, repose, health, life and the use of property; (2) The Administrative Code provision is violated if the act is detrimental to the life or health of any individual, whereas an essential element of the crime defined by the Penal Law is that the act must affect a *considerable number* of persons.

The crux of any case involving the question whether a person is committing a nuisance, civil or criminal, in the maintenance or use of his own property, is the rather indefinite test of whether the defendant is making a *reasonable* use of his property. These cases invariably involve two general but conflicting principles of law: The right to use one's property as one sees fit, and the duty to refrain from using one's property in such manner as to produce injury to others. This was perhaps best illustrated in the leading case of *Campbell* v. *Seaman* (63 N. Y. 568, 576) wherein the court said: "It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his

private interests. Generally, no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and qualifications. *Sic utere tuo ut alienum non laedas* is an old maxim which has broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life.''

While the section of the Administrative Code under discussion has not heretofore been the subject of judicial construction, there are numerous cases involving the problem of whether a particular type of noise constitutes a civil or criminal nuisance. It has been recognized for centuries that unreasonably loud noise may constitute a nuisance. In *People* v. *Rubenfeld* (254 N. Y. 245, 248) Chief Judge CARDOZO, citing an English case decided in 1726, wrote: '' Long ago it was adjudged that one dwelling in a city who with the aid of a speaking trumpet made great noises in the night time to the disturbance of the neighborhood, must answer to the King ''.

In the same case the test applied by Judge CARDOZO in determining whether the noise constituted a nuisance, was '' the effect of the offensive practice upon the reasonable man or woman of average sensibilities ''. (See, also, *Haber* v. *Paramount Ice Corp.*, 239 App. Div. 324, affd. 264 N. Y. 98; *Bove* v. *Donner-Hanna Coke Corp.*, 236 App. Div. 37; *People* v. *Accurate Brass Co.*, 271 App. Div. 1031; *Peters* v. *Moses*, 171 Misc. 441, mod. and affd. 259 App. Div. 307.)

The parties stipulated that when the air-conditioning unit is in operation it makes a continuous droning sound comparable to the distant roar of the ocean. It is the type of sound to which one may become so accustomed in the course of time as to be completely oblivious of its existence. Its continuous character makes it less annoying than other noises which have become part of the fabric of our urban lives, such as the sound of traffic with the racing of engines and the sounding of horns, the conversations of passersby in the streets, the crying and playing of children in neighboring apartments, and similar other noises forming a part of the routine of our daily lives.

"A person who resides in the centre of a large city must not expect to be surrounded by the stillness which prevails in a rural district" (*McCaffrey's Appeal,* 105 Pa. 253, 257). "No one is entitled to absolute quiet in the enjoyment of his property; he may only insist upon a degree of quietness consistent with the standard of comfort prevailing in the locality in which he dwells" (*Collins* v. *Wayne Iron Works,* 227 Pa. 326, 331).

The air-conditioning machine is a product of man's constant search for the improvement of his own comfort and enjoyment of life. That its use may cause some annoyance to others does not justify denouncing its use as criminal. It is an unfortunate truth that virtually every scientific invention has carried with it not only advantages but burdens. The airplane, invented for the purpose of speeding transportation, has become the principal weapon of inflicting death in war. The automobile, designed for man's pleasure, has become the most destructive peacetime weapon. And so it is with many other inventions.

Unfortunately, progress is not marked by a straight line in a constant forward direction, but rather by a ziz-zag course, only the ultimate direction of which is clearly marked. A conviction in this case would not only ignore the way pointed out by firmly established principles in the law of nuisance, but would constitute a vain attempt to arrest scientific progress.

No doubt the manufacturers of air-conditioning units are aware of the desirability and necessity of producing their machines in such manner as to render them as noiseless as is consistently possible with their efficient operation. No doubt the course of time will result in progress in that direction.

The present case involves the operation of a properly functioning air-conditioning unit. Another question would be presented if, due to defective construction or disrepair, the unit were to be excessively noisy.

The court finds that the operation of the defendant's air-conditioning unit did not create an "unreasonably loud" noise within the meaning of section 435–5.0 of the Administrative Code, and does not constitute a public nuisance. The complaint is accordingly dismissed.

The court further holds that there is no violation to sustain a complaint under section 1530 of the Penal Law, and the application is therefore denied.