4 N.Y.2d 39 (1958)
In the Matter of Crossroads Recreation, Inc., et al., Appellants,
v.
Frank P. Broz et al., Constituting the Board of Appeals of the Village of Mount Kisco, Respondents.
Court of Appeals of the State of New York.
Submitted October 21, 1957.
Decided February 28, 1958.
Edward T. Salvato for appellants.
Frederick E. Shulman for respondents.
Judges DESMOND, DYE, FULD, FROESSEL and BURKE concur with Chief Judge CONWAY; Judge VAN VOORHIS dissents in an opinion.
*41 Chief Judge CONWAY.
In 1939 Crossroads Recreation, Inc. (hereinafter referred to as "Crossroads") acquired a triangular-shaped parcel of land in the Village of Mount Kisco (hereinafter referred to as the "Village"). At that time, the land was vacant except for a gasoline station  erected in and operating since 1928  which was located at the southerly end of the property. Shortly after Crossroads' purchase of the property, it installed bowling alleys in the middle of the parcel. The northerly portion of the parcel, however, remained vacant. In 1945 the Building Zone Ordinance of the Village was amended so as to prohibit the use of the property, located in a Business "A" district, as a gasoline station. Thereafter, in such a Business "A" district, only retail stores generally, real estate offices, etc., were permitted uses. Thus did the use of the property as a gasoline station become a nonconforming use. In the early part of 1955, Crossroads entered into a one-year *42 lease for the gasoline station with Kesbec, Inc., with a provision that, if permission were granted to enlarge and modernize the station, Kesbec would enter into a 20-year lease with Crossroads. One Pietrobono, who had been operating the gasoline station since 1947, as a subtenant of an earlier tenant of Crossroads, entered into a sublease with Kesbec.
On October 3, 1955 Crossroads, joined by Kesbec, applied to the building inspector of the Village for permission to tear down the existing gasoline station and to erect in its stead a modern and much larger establishment. While it is clear here, and no one questions the fact, that the petitioners may continue to operate the gasoline station as it presently exists  because it was devoted to such a use prior to 1945, when the prohibitory zoning ordinance took effect (see People v. Miller, 304 N.Y. 105, 107)  the petitioners may not "enlarge that use as a matter of right" (Matter of Chandler v. Corbett, 274 App. Div. 1073, 1074). Were that not so, zoning laws would, in effect, be rendered nugatory and nonconforming parcels, as a result, would assume great values  "a premium would then be the reward for violating the law" (Matter of Pisicchio v. Board of Appeals, 165 Misc. 156, 157). The present condition of the gasoline station may be summed up thus: The size of the building is about 16 feet by 20 to 22 feet; there are no rest rooms; there are no indoor lubritorium facilities; there is only an outside lift for lube work; there are two pump islands with two pumps on each island; there are two 2,000-gallon underground gasoline tanks, there is one 1,000-gallon underground tank, and there are four 550-gallon underground tanks. The gasoline station sought to be erected would take the following form: The old building would be torn down and replaced by a building 45 feet by 30 feet; the new building would include a sales office, a storage room, two rest rooms, and two lubritorium bays; the outside lift would be removed; the two pump islands would be removed; three new pump islands would be installed with two pumps on each island; the seven underground gasoline tanks would be retained, and a new 3,000-gallon underground tank would be installed. On October 4, 1955 the building inspector denied the application on the ground that the proposed action would be violative of subdivision (b) of section 2 of the Building Zone Ordinance, which provides that "no building or structure containing a *43 non-conforming use shall * * * be hereafter extended or enlarged except in conformance with the provisions of this ordinance."
On October 10, 1955 the petitioners appealed to the Board of Appeals of the Village and made application for a variance pursuant to subdivision (2) of section 19 of the Building Zone Ordinance on the ground of "unnecessary hardships in the way of carrying out the strict letter of this ordinance". After a public hearing was had, at which time testimony was adduced and exhibits submitted, the Board of Appeals, in unanimously denying the application for a variance, found, inter alia, that the petitioners failed to prove the requisite hardship. The Appellate Division confirmed that determination.
The Board of Appeals may grant a variance on the ground of hardship where the record shows that "(1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood * * *; and (3) that the use to be authorized by the variance will not alter the essential character of the locality" (Matter of Otto v. Steinhilber, 282 N.Y. 71, 76). Since the record here does not, as we shall demonstrate, show that "the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone", we need not consider the requirements numbered (2) and (3) above.
Petitioners contend, because of the inadequacy of parking facilities, that there was no conforming use to which the property could be put; that, because of the shape and size of the property, the only use to which it could be put was that of a gasoline station; that the "Sinclair" gasoline station  located across the street from the petitioners' station  was granted permission to modernize its station; that petitioners' station has no rest rooms and no indoor lubritorium facilities; that a modern and much larger station would beautify the property; and that, therefore, they should be allowed to demolish their existing station and, in its stead, to erect a modern and much larger gasoline station  otherwise, they would not be able to "face the competition."
We are in agreement with the Board of Appeals that there was here a failure of proof as to the requisite "hardship" which must be shown to warrant the granting of a variance.
*44 In order to demonstrate hardship, the petitioners had the burden of showing that "the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone". Since the operation of their gasoline station, as it presently exists, was a nonconforming use which was suffered to continue because it had been devoted to such a use before the prohibitory zoning ordinance took effect, it was a use which was "allowed in that zone". Business "A" uses, such as retail stores generally, real estate offices, etc., were also, of course, "allowed in that zone". Hence, the petitioners had the burden of proving that their property could not yield a "reasonable return" if used for a gasoline station (as it presently exists) or for any Business "A" use (retail stores generally, real estate offices, etc.).
There is no proof whatever in this record to show: (1) the amount of purchase price paid by Crossroads for the entire parcel of property; (2) the present value of the entire parcel of property or any part thereof; (3) the expenses and carrying charges in connection with the maintenance of the entire parcel of property or any part thereof; (4) the amount of taxes on the entire parcel of property or any part thereof; (5) the amount of any mortgages, liens or other incumbrances, if any, on the entire parcel of property or any part thereof; (6) the amount of annual income realized by the gasoline station  before the Sinclair station had been modernized, and after the Sinclair station had been modernized; (7) the amount of annual income realized by the bowling alley business; (8) the amount of rent paid to Crossroads by its earlier tenant, the operator of the bowling alley business; and (9) an estimate as to what a reasonable return on the entire parcel of property or any part thereof should be  based on the initial investment of Crossroads or the present value of the property.
Actually, the only "dollars and cents" proof offered  and, because it was isolated, it was indeed meaningless and innocuous  was that Crossroads presently realizes a rental of $150 per month from Kesbec under its one-year lease of the gasoline station and that, if the variance be granted, Kesbec would spend $40,000 to $50,000 to erect a modern and much larger gasoline station, and would then pay Crossroads a rental of $200 per *45 month for 20 years. Similarly, the proof offered through Pietrobono was entirely unavailing. Pietrobono testified that before the Sinclair gasoline station had been modernized, the petitioners' station "did pretty good"; but after the Sinclair station had been modernized, to quote Pietrobono, they could not "face the competition." The fatal omission in that testimony is obvious. There simply were no underlying facts adduced which permitted of the conclusion that the gasoline station of petitioners was  as a result of and after the modernization of Sinclair's station  a losing proposition. It may well be that Crossroads' station did lose some business as a result of Sinclair's modernization but, since there is not an item of proof to indicate the extent to which Crossroads suffered a reduction in business, there is no basis for the conclusion that its income was less than a reasonable return. Actually, there should at least have been proof as to what the income of Crossroads' station was before the Sinclair station was modernized, and what the income was after the Sinclair station was modernized. Only thus could loss of business, if any, be measured. But even then, in the absence of additional proof as to taxes, expenses, carrying charges, etc., the problem of whether the reduced income was or was not a reasonable return would have to be faced.
In any event, as we see it, because the essential elements of proof, as earlier enumerated, were here wanting, this record is entirely devoid of any basis or yardstick whereby a reasonable return  based on the initial investment of Crossroads or the present value of the property  could be measured and ascertained. Plainly, before a claim that a property is yielding less than a reasonable return may properly be interposed, the reasonable return for that property must first be known or at least be ascertainable. Since the petitioners had the burden of proving that the property in question cannot, if used for an allowed purpose, yield a reasonable return, the failure of proof above referred to must be deemed fatal to petitioners' claim that the gasoline station, as it presently exists, is not yielding a reasonable return. For that reason alone, the petitioners must be deemed to have failed to establish the requisite hardship to warrant the granting of a variance to permit them to demolish *46 the present station and to erect a modern and much larger one in its stead (see Matter of Young Women's Hebrew Assn. v. Board of Standards & Appeals, 266 N.Y. 270, 274, 275-276).
It may well be true that the petitioners would realize a greater return if permission were granted to modernize and enlarge the existing gasoline station. It does not follow, however, that, because the requisite permission is withheld, the petitioners are suffering a hardship. The only pertinent inquiry is whether the present allowed use is yielding a reasonable return. That it may not be the most profitable use is immaterial. (See People ex rel. Werner v. Walsh, 212 App. Div. 635, 640, affd. 240 N.Y. 689; Franklin v. Incorporated Vil. of Floral Park, 269 App. Div. 695, 696, affd. 294 N.Y. 862; Matter of Reed v. Board of Standards & Appeals, 255 N.Y. 126, 134; Matter of Stillman v. Board of Standards & Appeals, 222 App. Div. 19, 20, affd. 247 N.Y. 599; Matter of Falvo v. Kerner, 222 App. Div. 289, 291.) It also may well be true that the property in question would be beautified if permission were granted to demolish the present gasoline station and to erect a new, modern and much larger station. The proposed beautification of the property, however, has no bearing on the question whether petitioners are presently realizing a reasonable return from their present use of the property (cf. Matter of Fortuna v. Murdock, 257 App. Div. 993, affd. 281 N.Y. 763).
The mere fact that the Board of Appeals had recently granted the Sinclair gasoline station  located across the street from petitioners' station  permission to modernize, does not provide the petitioners with a valid basis for insisting on a variance here. In Matter of Larkin Co. v. Schwab (242 N.Y. 330, 336) this court declared: "The mere fact that consents were granted to owners of premises somewhat similarly situated does not in itself show that consent was arbitrarily refused to this applicant. The question is not whether someone else has been favored. The question is whether the petitioner has been illegally oppressed. Exercise of discretion in favor of one confers no right upon another to demand the same decision. * * * There are, of course, extreme cases where analogy is so complete, where grant of consent under similar circumstances has been so frequent, both before and after refusal in one instance, that inference arises that the refusal is the result of unfair *47 discrimination and oppression." The present case was clearly not an "extreme" case as envisaged by the Larkin decision. On this record, we know only that "Sinclair" was a gasoline station located across the street from petitioners' station and that, recently (about a year before the instant public hearing was held), Sinclair had been granted permission to modernize its station. There was not an item of proof relating to the size of Sinclair's property, the shape of its property, the earlier condition of its building, the value of its property, the return realized from its property, etc. Hence, there was here no room for a finding that Sinclair's property and petitioners' property were, in the requisite and material respects, substantially similar. That being so, the denial of a variance here cannot be said to have been arbitrary (see, also, People ex rel. Werner v. Walsh, 212 App. Div. 635, 638, affd. 240 N.Y. 689, supra; People ex rel. Fordham M. R. Church v. Walsh, 244 N.Y. 280, 289; People ex rel. Sullivan v. McLaughlin, 266 N.Y. 519, 520).
Since, as earlier demonstrated, on this record, the petitioners have not shown that their use of the property as a gasoline station (as it presently exists) cannot yield a reasonable return, it of course becomes unnecessary for us to consider the petitioners' claim that the property, if used for Business "A" purposes (retail stores generally, real estate offices, etc.) would not yield a reasonable return because of inadequate parking facilities.
The petitioners further contend that the members of the Board of Appeals, in arriving at their determination, must be guided by the testimony of the witnesses called before them and, if they choose to act on information or knowledge acquired otherwise, such undisclosed facts must be set forth in their return. Obviously, in aid of intelligent review on appeal, that must be so. It may not be said here, however, that the Board of Appeals, in denying the application for a variance, was not guided by the testimony of the witnesses produced before it. Rather, that is precisely what led the board to conclude that there was here a fatal failure of proof as to hardship. We suspect that petitioners' intimation that the board  in denying the application for a variance  must have acted on nonrecord facts, which were not disclosed in its return, is predicated on the assumption that the testimony of petitioners' real estate experts conclusively *48 established the requisite hardship. As we have demonstrated earlier, and as the board here found, there was a fatal failure of proof as to hardship. Thus is the assumption made by petitioners erroneous and the conclusion based thereon unwarranted.
Since the board's finding that there was a failure of proof as to hardship is sustained by this record, we need not consider the alternative finding of the board that, even if there were a hardship, petitioners would still not be entitled to a variance for the reason that such hardship was "self inflicted."
The order of the Appellate Division should be affirmed, with costs.
VAN VOORHIS, J. (dissenting).
This appeal involves a gasoline service station on part of a triangular area forming an island between the intersection of three streets in the village of Mount Kisco. The gasoline station fronts upon two of these streets. It has been used for a gasoline station since 1928. The owner desires to modernize this antiquated filling station, by replacing the original building 16 by 20 feet in dimensions with a modern building 45 by 30 feet, on the same land, with rest rooms and two lubritorium bays for inside lube work. It now has no rest rooms and only an outside lift for changing oil and lubrication. The owner also has applied to substitute three new pump islands for the two old-style pump islands to be removed. The identical land area is proposed to be used for the same purposes to which it has been devoted for 29 years. The only change is that the old, outmoded structures are to be replaced with an up-to-date building and appliances to serve the increased demand arising from the larger number of automobiles now in use. The renovated premises would be better looking, would conform to present day standards and would be preferred by the neighbors, judging from the circumstance that none of the people who appeared at the public hearing objected to the issuance of this permit and many spoke in favor of it. Although similar modernization permits have been granted to competitors in the vicinity, permission has been denied to appellants to do likewise. The granting of permission to others similarly situated in the face of denial to appellants is not a legal basis for objection, to be sure, but appellants have a vested right in the *49 prior use of the subject property for a gasoline station of which they could not be deprived by the adoption of the zoning amendment in 1945. That was done 17 years after this service station had been built and had gone into operation. In People v. Miller (304 N.Y. 105, 107) it was said: "It is the law of this state that nonconforming uses or structures, in existence when a zoning ordinance is enacted, are, as a general rule, constitutionally protected and will be permitted to continue, notwithstanding the contrary provisions of the ordinance. (See People ex rel. Ortenberg v. Bales, 250 N.Y. 598; Matter of Caponi v. Walsh, 228 App. Div. 86; New York State Investing Co. v. Brady, 214 App. Div. 592; Matter of Pelham View Apts. v. Switzer, 130 Misc. 545; People v. Stanton, 125 Misc. 215; cf. City of Buffalo v. Chadeayne, 134 N.Y. 163; see, also, Jones v. City of Los Angeles, supra, 211 Cal. 304; Amereihn v. Kotras, 194 Md. 591; Adams v. Kalamazoo Ice & Fuel Co., 245 Mich. 261; Rathkopf, The Law of Zoning and Planning [2d ed., 1949], § 26, p. 296 et seq.)".
If this permit were issued, it is argued that appellants would be allowed to enlarge their prior use which is said to be forbidden. Such reasoning under the circumstances of this case seems to me to be without substance. Where enlargement changes the character of the business it is forbidden, but not all enlargements are within the proscribed category. Enlargement of an existing nonconforming use was permitted as a property right in Town of Somers v. Camarco (308 N.Y. 537) where it was held that a town could not constitutionally restrict a producer of sand and gravel from the use of parcels of land consisting of 27 acres and 28 acres for the production of sand and gravel, although only a comparatively small portion of the total acreage had been excavated when the zoning ordinance was adopted. In seeking to modernize this small service station, the owner was neither changing the use to which it had been devoted nor enlarging the area upon which such use was to be conducted. Appellants were merely conditioning it for current modern use, and adapting it to accommodate the increased business which the greater number of automobiles on the highways has brought to every gasoline service station. There is a constant urge driving planners and officials of municipalities to undermine the rule of law permitting the continuance *50 of pre-existing uses, and to confiscate them under the guise of the police power. Zoning is designed for future development, however, and has little to do with changing the past development of municipalities. Redevelopment or rehabilitation projects differ from zoning, in that existing buildings and uses are taken for public purposes on payment of just compensation. An existing use or building cannot be appropriated to a public use without compensation under the zoning laws, unless the municipality confiscates the property obtaining something for nothing. It is idle to argue that appellants' gasoline filling station is allowed to be continued but not to be modernized or enlarged upon the same property, since requiring a business to be conducted in 1958 under the obsolete procedures of 1928 is to destroy it. Growth and development are the life of industry and trade, nor can anyone continue in business if he is to be relegated to antiquated facilities and outworn equipment. Business cannot remain static. A business man cannot afford to undergo the risk that his volume of trade will shrink without the chance of profiting in his volume increases. An adjudication that a business man may continue a prior use if he fails but not if he succeeds destroys the prior use. This court recognized and made room for this circumstance in People v. Perkins (282 N.Y. 329, 330) where it was said in an unanimous Per Curiam opinion: "The business which the defendant conducted and which has been found violative of the ordinance is the same business in character as that conducted by the defendant before the ordinance was adopted. To be sure the business has increased in volume. He buys and sells considerably more than he did before 1924. He has added the sale of some novelties, consisting of pottery and wooden lawn ornaments. He has made use of the space on the lot on which his house is built. In essence, the business is the same. We find no evidence in the record to justify the finding that the defendant was doing more than continuing the permitted non-conforming use."
That is what petitioners are seeking to do here. The courts have had to deal before this with zoning questions involving the repair or replacement of dilapidated, destroyed or obsolete buildings for uses prohibited at the time when reconstruction is undertaken. In People (Complaint of Ketcher) v. Miano (234 App. Div. 94) it was held that notwithstanding a subsequently *51 enacted zoning ordinance a frame building used as a blacksmith shop could be replaced with a brick structure, in order to continue the conduct of the owner's "blacksmithing and tool business" as a continuance of the prior use of blacksmithing. In Matter of Empire City Racing Assn. v. City of Yonkers (132 Misc. 816) it was held that where property had been used as a race track at the time of the adoption of a zoning ordinance which placed it in a residential zone, and such use had not been abandoned, the owner was entitled to a permit to build new barns in place of some which had been destroyed by fire, even if they were to be placed upon different sites from the ones which were destroyed but within the boundaries of the race track. It was held at the Queens County Special Term in Matter of Furman Ave. Realty Corp. v. Board of Standards & Appeals (9 Misc 2d 566) that the conversion of a cow barn into a pasteurizing, bottling and distributing plant was within a prior use where these purposes had been served to some extent upon the subject property. In Incorporated Vil. of North Hornell v. Rauber (181 Misc. 546) a sawmill was allowed to be reconstructed after having been partially destroyed by fire, notwithstanding that in the meantime a zoning ordinance was enacted that purported to prohibit it. In Amero v. Board of Appeals of Gloucester (283 Mass. 45) the Supreme Judicial Court of Massachusetts held that adding another pump to a gasoline station might be found to come within the prior use.
When this gasoline filling station was constructed in 1928 it was not possible to install the equipment of 1958 for changing oil and lubricating motor vehicles, or supplying gasoline, nor was it customary as it is today to provide rest rooms for the convenience of customers. Now it is impossible to conduct a gasoline station without equipment and facilities of this nature. The enlargement of this obsolete, dilapidated structure is merely to accommodate the performance of inside lube work and to provide for rest rooms. Lubrication work used to be done outdoors; now oil is changed and autos are lubricated indoors. Naturally more automobiles are serviced than was true in 1928, or the proprietor would be out of business. Denial of the permit by the Zoning Board of Appeals of the Village is merely an indirect way to confiscate this pre-existing nonconforming use. If a building can be replaced or remodeled when *52 it is burned or becomes dilapidated, the same reasons dictate that it must be allowed to be reconstructed if it has become obsolete (Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N.Y. 298, 304).
Confiscation of a prior nonconforming use by denial of this permit is the principal ground for granting this petition, although petitioners have also made the point that practical difficulties and unnecessary hardship are involved as matter of law. That point is also well taken, in my view, for the reason that the subject parcel is on an island in the midst of three busy streets isolated from sidewalks. The idea that it could be utilized for store or office purposes is fanciful, since it can only be reached on foot by jaywalkers. Its lack of value for any purpose but a gasoline station is uncontradicted by substantial testimony of any real estate experts. This is not a self-inflicted hardship due to the circumstance that the owner himself blocked off access by pedestrians by disposing of the land to the north for bowling alleys. These bowling alleys were constructed before 1945, and at a time when petitioners could have modernized this service station without being blocked by this zoning ordinance, as their competitors have since done by the favorable dispensation of the Zoning Board of Appeals.
The order appealed from should be reversed and the petition granted.
Order affirmed.