Cooke, J. (dissenting).
In response to overwhelming evidence of abuses by mobile home park owners and operators (see NY Legis Ann, 1974, p 215), the Legislature enacted section 233 of the Real Property Law (L 1974, ch 973, as amd by L 1977, ch 131, § 1), which provides that arbitrary, capricious or unreasonable rules and regulations foisted upon mobile home park tenants with little bargaining power shall be unenforceable (Real Property Law, § 233, subd f, pars 1, 3). In this action to declare certain rules and regulations promulgated by defendant, a mobile home park owner, arbitrary and unenforceable and to enjoin the enforcement of such rules, both Special Term and the majority of the Appellate Division determined defendant’s rule 4 (prohibiting posting of "For Sale” signs) and rule 14 (relating to installation of air conditioners) to be invalid. There should be an affirmance; both rules are arbitrary and unreasonable and, therefore, by operation of law, unenforceable.
Defendant Valley Forge Village is the owner of a mobile home trailer park in Bohemia in Suffolk County—a county in which there is a zero percent vacancy rate for mobile home sites. As a condition precedent to leasing space to a tenant in its park, defendant requires its tenants to sign and agree to abide by a list of rules and regulations, two of which are in issue in this appeal.
Rule 14 of the Rules and Regulations of Valley Forge Mobile Home Park provides: "Window air conditioners must be approved by Management. Because of the noise factor, a *632 written note of approval from your neighbor on the side the unit is to be installed must be on file with the Management before the unit can be installed into the mobile home.” There is no such restriction in the statute. Section 233 (subd f, par 3, cl [b]) of the Real Property Law provides in pertinent part: "No mobile home park owner or operator shall * * * restrict the installation, service or maintenance of any [electric or gas] appliance * * * so long as such an installation or improvement is in compliance with applicable building codes and other provisions of law” (emphasis added).. The intent of the Legislature here is clear. Neither legislative history nor the statutory language implies, as the majority suggests, that this provision was enacted to deter monopolistic practices by park owners in prohibiting park tenants from installing laundry appliances. Indeed, the plain language of the statute, by employing the words "any appliance”, demands a more expansive interpretation (see McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 91, 94-96). Thus, whereas the Real Property Law gives a mobile home park tenant an absolute right, subject to local building codes, to install an air conditioner, rule 14 purports to restrict this right, subjecting it to the approval of management and the written consent of the" tenant’s neighbor.
Rule 14, then, is arbitrary and unreasonable inasmuch as it impermissibly conditions the exercise of a tenant’s statutory right to install an air conditioner on the approval of his neighbor (cf. Matter of Fink v Cole, 302 NY 216). While it is recognized that a noisy air conditioner may disturb the relative peace and tranquility attendant to the suburban lifestyle (but see People v Arkow, 204 Misc 635, 639), rule 14 unwarrantedly presumes the existence of a nuisance and attempts its abatement before it is shown to exist. Action taken which has no foundation in fact or reason is, by definition, arbitrary and capricious (cf. Matter of Schwab v McElligott, 282 NY 182, 186). Moreover, the rule fails to take into account the possibility that a neighbor’s consent might be unreasonably withheld for reasons that have no bearing on the installation of the appliance. The malice or animosity of a cantankerous neighbor may not restrict the exercise of a tenant’s statutory rights. Further, defendant advances no justification as to the reason its consent, which also may be unreasonably withheld, should be determinative of a tenant’s rights. As rule 14 is palpably arbitrary and unreasonable, it must be declared unenforceable.
*633 The same holds true with respect to rule 4. Section 233 (subd f, par 3, cl [e]) of the Real Property Law provides, in part: "No mobile home park owner or operator shall deny any mobile home tenant the right to sell his mobile home within the mobile home park”. Rule 4, however, purports to restrict a basic incident to a tenant’s statutory right to sell his mobile home free from interference of the mobile home park operator by providing that "[n]o 'For Sale’ signs may be shown or displayed.” Both Special Term and the majority in the Appellate Division conceded that defendant does have a right to regulate the number, location and size of signs placed upon the mobile home itself and to prohibit the placing of outdoor signs on the lands. However, both courts found that rule 4 unduly restricts a method which is a necessary concomitant to a tenant’s statutory right to sell his mobile home and concluded that a tenant has a statutory right to place a reasonably sized sign in the window or upon the exterior of his mobile home.
Unreasonably prohibiting the placement of a "For Sale” sign on a tenant’s mobile home converts a tenant’s statutory guarantee of sale free from vexatious interference of the mobile home park owner into a hollow right. The grant of the right to sell necessarily includes a guarantee of the right to employ methods commonly used to market residential property. It is no answer to suggest that the tenant is not restricted from employing alternative methods of communication to inform potential purchasers that his mobile home is for sale. As the Supreme Court has recently noted: "The options to which sellers realistically are relegated—primarily newspaper advertising and listing with real estate agents— involve more cost and less autonomy than 'For Sale’ signs; * * * are less likely to reach persons not deliberately seeking sales information * * * and may be less effective media for communicating the message that is conveyed by a 'For Sale’ sign in front of the house to be sold” (Linmark Assoc, v Willingboro, 431 US 85, 93).
The pretext upon which defendant seeks to justify the promulgation of rule 4—to prevent strangers from wandering through the park, ostensibly to ascertain whether any homes were for sale, when in fact they might be selecting targets for burglary—is specious. While any attempt by defendant to protect the welfare of its tenants is certainly to be applauded, there is simply no basis in fact for concluding that a blanket *634 prohibition of "For Sale” signs will deter potential burglars from riding around park streets to survey targets for crime, particularly where, as here, the rules contain no restriction as to public access to the park streets. Moreover, defendant’s actions with respect to the sale of mobile homes belies any reliance by it on this theory. Defendant admitted that, in functioning as broker for the sale of mobile homes in the park,* it places advertisements in local newspapers stating that mobile homes are available for sale in Bohemia, New York. While the actual location of Valley Forge Village does not appear in the ads, the site of the trailer park was invariably furnished to all inquirers over the telephone.
In sum, rule 4 serves no function other than the protection of defendant’s position as broker for the sale of mobile homes in the village. As the prohibition of the posting of "For Sale” signs impairs a mobile home park tenant’s undisputed right to sell his home for no valid purpose (cf. Linmark Assoc, v Willingboro, 431 US 85, supra), it is arbitrary and unreasonable and, hence, unenforceable (Real Property Law, § 233, subd f, par 3).
Accordingly, I dissent and vote that the judgment of the Appellate Division be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler; Judge Cooke dissents and votes to affirm in a separate opinion.
Order reversed, with costs, and rules 4 and 14 declared enforceable.

 Defendant’s rules and regulations provide: "No restriction as to resale of your mobile home which is to be removed from the Park. However, all resales remaining in the park are subject to a 10% commission. Notify Management of your desire to sell so we may help you in obtaining an approved buyer and to supply you with the necessary forms to complete the sale.”