*576 OPINION OF THE COURT
Stanley Gartenstein, J.
Complainant and defendant are neighbors. To put it mildly, they hate each other with passions as pure as they are intense. Defendant operates a garage and auto repair shop at 439 West 47th Street. It is alleged in this prosecution that defendants (the individual and his incorporated sole proprietorship) created loud and unnecessary noise by loud banging, dropping tools, sanding, screeching, allowing dogs to bark, running motors, honking horns, and a variety of esoteric annoyances geared to making life intolerable for residents of the block, complainant included. The prosecution is under section 240.25 of the Penal Law (harassment) and section 1403 of the Administrative Code of the City of New York, the so-called noise polution law. The sole allegation supporting the complaint as to harassment is an alleged threat of bodily harm by defendant to complainant. In response to a demand for particulars, the People are unable to supply dates and times of this alleged noise other than a continuous course over a number of months on a 24-hour a day basis; nor the decibel level of the noise alleged to be actionable under the Administrative Code.
Defendant moves to dismiss for insufficiency or in the interests of justice in the alternative on the theory that this prosecution for what is essentially a necessary operating procedure of defendant’s business may well have, if successful, the effect of destroying a going business beneficial to the economic life of the city.
PERSPECTIVE
Nuisances have existed and been dealt with in equity since the very dawn of the common law. In 1726, it was held in Chancery that "one dwelling in a city who with the aid of a speaking trumpet made great noises in the night time to the disturbance of the neighborhood, must answer to the King” (cf. People v Rubenfeld, 254 NY 245, 248, citing Rex v Smith, 1 Strange 704).
There are nuisances and nuisances. Some are actionable per se. "It is clearly agreed,” writes Bacon (Abridgement of the Law, subtitle, Nuisances, cf. People v Vandewater, 250 NY 83, 87) "that keeping a bawdy house is a common nuisance, as it endagers the publick Peace by drawing together dissolute and *577 debauched Persons; and also has an apparent Tendency to corrupt the Manners of both Sexes by such an open Profession of Lewdness.”
A nuisance per se was traditionally an activity devoid of any public benefit whatsoever. "All disorderly inns or alehouses, bawdy-houses, gaming-houses, stage-plays, unlicensed booths and stages for rope-dancers, mountebanks, and the like, are public nuisances, and may upon indictment be suppressed and fined.” (4 Blackstone’s Commentaries, p 168.)
Further illustrating this principle, Bacon writes: "It is clearly agreed that all common Gambling Houses are Nusances in the Eye of the Law, being detrimental to the Publick, as they promote Cheating and other corrupt Practices, and incite, to Idleness and avaricious Ways of gaining Property, great Numbers whose time might otherwise be employed for the general Good of the Community.” (Cf. People v Vandewater, supra, pp 87-88.)
LEGITIMATE BUSINESS INTERESTS AS ACTIONABLE NUISANCE
Coupled with their power of abating a nuisance either by injunction in equity or by conviction under the Penal Law, our common-law courts formulated a policy of great restraint in dealing with economic interests conducting on-going businesses and refused to inhibit these interests unless they became "disorderly” or offended "public decency” (King v Ivyes, 2 Show 468; Stephens v Watson, 1 Salkend 45; Faulkner’s Case, 1 Saunders 248; State v Bertheol, 6 Blackford [Ind] 474). In People v Vandewater (supra, p 91) the Court of Appeals stated: "Doubtless an unrestricted judicial power to punish as a public nuisance all practices which in the opinion of the courts corrupt the public morals or disturb the public peace might create a danger of judicial invasion of the legislative field, through the creation of new crimes by the courts. Perhaps the power must be restricted to practices which are in true sense analogous to those which have been held to constitute common-law nuisances. At least for the purposes of this case, we shall assume that our power is so restricted.”
In dealing with this latter class of potential nuisances which became such only upon judicial declaration thereof, the law recognized that there are inconveniences built into life in a city or industrialized area which a potential litigant assumes by the very act of living there (People v Amecco Chems., 43 NYS2d 330; Bove v Donner-Hanna Coke Corp., 236 App Div *578 37). As pointed out by the court in City of Rochester v Charlotte Docks Co. (114 NYS2d 37, 76), "When the interests of human beings and industry clash, there must be some adjustments on either side, irrespective of zoning lines and legal rights, if we are to have a harmonious society.” In People v Arkow (124 NYS2d 704, 706-707) the court reaffirmed this ancient principle, holding that "Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. For these they are compensated by all the advantages of civilized society. If one lives in the city, he must expect to suffer the dirt, smoke, noisome odors, noise and confusion incident to city life.”
In People v Cuneo Eastern Press (257 NY 208), the Court of Appeals reversed a conviction for public nuisance holding unanimously that where a business is legal, the noise necessarily emanating therefrom could not sustain a conviction. (See, also, Matter of Long Is. Light. Co. v City of Long Beach, 305 NY 880; People v Abbro Metallics, 125 NYS2d 69.) And in People v Dayton Cleaners & Dyers Corp. (251 App Div 332, 333) the court stated, citing People v Cuneo Eastern Press (supra): "The proofs fail to show that defendant’s business is unlawful, or that it is not conducted properly or by the best known methods for conducting such a business, or that the noise, odors, and dirt complained of do not necessarily result from the proper conduct of the business * * * In view of the character of the neighborhood and the evidence as to defendant’s equipment and manner of conducting its business, the proofs are insufficient to sustain the conviction.”
Finally, in dealing with the rights of businesses and their aggrieved neighbors, the law has evolved the principle that enforcement of a right to quiet enjoyment, even where one may be said to exist, will not override the interests of a legitimate business under circumstances wherein same would represent a confiscatory deprivation (Incorporated Vil. of North Hornell v Rauber, 40 NYS2d 938; Fire Dept. of City of N. Y. v Gilmour, 149 NY 453; People v Kaye, 212 NY 407). In North Hornell (supra), this principle was followed even under circumstances wherein the original nonconforming use in favor of the business sought to be enjoined might be argued to have terminated via destruction of its physical plant by fire and subsequent rebuilding thereof.
NUISANCE AND CRIMINAL LIABILITY
While the Penal Law always recognized that a nuisance *579 actionable in equity might constitute such a danger to the public at large as to render it liable to prosecution as a crime (cf. former Penal Law, § 1530), the criminal courts were loathe to enforce what was basically a civil remedy. In one interesting situation (cf. City of Rochester v Charlotte Docks Co., 114 NYS2d 37, supra), the court of equity called upon to enforce civil remedies against a business claimed to be a nuisance found it necessary to point out in its decision (supra, p 48) that each and every criminal case cited to it had been reversed for insufficiency generated by the vastly more rigorous standard required to sustain criminal culpability. (See, also, People v Wheeler Shipyard, 248 App Div 746, reversing a conviction for nuisance and relying on character of a neighborhood, noise in the regular operation of a business, and insufficiency.) In People ex rel. Bushnell v Midland Terrace Corp. (45 NYS2d 642, 643) the court in reversing a conviction for nuisance held that: "Whatever may be the outcome of the pending civil proceeding, the judgments of convition cannot be sustained”.
RE-ENACTED CRIMINAL SANCTIONS
The Legislature, in re-enacting the revised Penal Law now in effect, recognizing the unfairness, indeed the practical impossibility, of imposing criminal liability for what is essentially a civil action in equity, carried forth these provisions in a form which now requires specific intent, a requirement not present under the old statute (see comparison between former Penal Law, § 1530, and present § 240.45; Notes on Commission of Revision of Penal Law, § 240.45.) Recognizing this basic defect in their case, the People are compelled to rely on an alternate and tenuous theory of culpability resting on peripheral statutes as they may apply to the facts before us. These statutes are section 240.25 of the Penal Law and section 1403.3-1.01 et seq. of the Administrative Code. Referring to the Administrative Code, section 1403.3-3.01 provides: "No person shall make, continue or cause or permit to be made or continued any unnecessary noise.” The standards for prohibited noise are contained in section 1403.3-4.01 which makes noise actionable only when it violates a specific provision of the code. Examination of the statutory scheme reveals a methodology of reliance upon decibel levels which are set for certain specified activities, viz., sound reproduction devices, *580 emergency signal devices, exhausts, motor vehicles, aircraft, rapid transit railroads, air compressors, paving breakers, circulation devices. All nonspecified activities fall within the ambit of noise level standards to be set by the administrator (Administrative Code, § 1403.3-5Í23) and prohibited noise is defined solely in terms of "sound level in excess of the appropriate allowable sound level promulgated by the administrator” (Administrative Code, § 1403.3-6.03, subd [b]). Clearly, therefore, unless it is alleged and proven that specific decibel levels have been promulgated by the administrator and exceeded by a noise level in excess thereof, viz., a specifically alleged decibel level, no actionable conduct is presented. The bill of particulars, manifesting a total inability on the part of the People to meet this standard of pleading and proof, mandates a ruling that the complaint is fatally defective. Far more significant, however, is the fact that even were the proscribed noise level pleaded and proven, a crime could only be made out after proceedings before the appropriate administrative board resulting either in an order which is disobeyed or in a civil money penalty which remains unpaid (Administrative Code, § 1403.3-8.25). Simply stated, there is no crime here, certainly no resort to the criminal courts.
APPLICATION TO THE FACTS
In assessing the totality of the facts before us, it appears that the salé actionable behavior is rooted in the allegation that defendant threatened complainant, an act which does not rise to the level of a crime (Penal Law, § 240.25). To the extent that this alleged act was a response by a legitimate businessman who elects to make his place of business in this city when so many others have fled and represents efforts to protect this business in the face of efforts threatening to destroy him economically, the court is of the opinion that the motion to dismiss in the interests of justice should be granted and so orders (cf. People v Clayton, 41 AD2d 204; CPL 170.40, subd 1). We are not unsympathetic to the plight of both sides, each of whom finds himself locked in combat over a situation in which neither is culpable. While an order dismissing this proceeding without prejudice to an action in equity might be appropriate, it is also obvious that the only resolution of this dispute will come when the parties realize (a) that they must learn to live with each other; and (b) that the essence of any compromise is reached when both sides are somewhat un *581 happy with the result. In this spirit, the parties are referred to the court mediation service, a voluntary undertaking, to be sure, but by far the cheapest course of action in the long run.
Proceedings dismissed.